UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DUSTIN BARRAL, | Case No. 3:23-cv-00155-ART-CSD |
| Plaintiff, | ORDER |
| v. | |
| TIM GARRETT, et al., | |
| Defendants. | |

Plaintiff, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil rights complaint pursuant to 42 U.S.C. § 1983, and has filed an application to proceed *in forma pauperis*. (ECF Nos. 1, 1-1). The matter of the filing fee will be temporarily deferred. The Court now screens Plaintiff's civil rights complaint under 28 U.S.C. § 1915A.

## I.   SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action

"is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be

supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by an incarcerated person may therefore be dismissed *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.    SCREENING OF COMPLAINT

In the complaint, Plaintiff sues multiple defendants for events that took place while Plaintiff was incarcerated at Lovelock Correctional Center ("LCC"). (ECF No. 1-1 at 1).  Plaintiff sues Defendants Warden Tim Garrett and Associate Warden of Programs Karen LeGrand.  (*Id.* at 2).  Plaintiff brings one claim and seeks injunctive relief only.  (*Id.* at 3-4).

The complaint alleges the following:  During COVID, Garrett and LeGrand moved education classes from the phase 1 yard (units 1 and 2) to units 3A and 3B.  (*Id.* at 3).  Garrett and LeGrand have kept inmates in the phase 1 yard segregated from units 3A and 3B even though the COVID emergency is "removed." (*Id.*)

In 2022, LCC education brought back the "RESPECT" class which is a 12-week, 2-hour a day class.  (*Id.*)  However, to enroll in the class, an inmate must move to unit 3A or 3B.  (*Id.*)  If an inmate has a job or is enrolled in mental health,

the inmate must quit the job or mental health program to move into unit 3A or 3B for the three-month class. (*Id.*)  After finishing the RESPECT class, the inmate must wait a while for prison employment due to the "excessively long" time it takes to get a job at LCC.  (*Id.*)  During this wait time, the inmate is unable to earn time off his expiration date.  (*Id.*)

In February 2023, LeGrand and Garrett approved phase 1 inmates in all units to attend chapel and religious services together.  (*Id.*)  However, since December 2022, Muslims at LCC were permitted to mingle regardless of their phase 1 living status.  (*Id.*)  LeGrand and Garrett refuse to allow phase 1 yard inmates and the education units to mingle in the education unit even though all of the inmates are level one inmates.  (*Id.*)

Plaintiff brings a claim for Fifth Amendment due process violations based on access to education for workers and discrimination against phase 1 workers.  (*Id.*)  The Court dismisses the Fifth Amendment claim with prejudice as amendment would be futile because Plaintiff is suing state employees rather than federal employees. *See Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) (explaining that "[t]he Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States.").  Instead, the Court interprets Plaintiff's allegations as claims for Fourteenth Amendment due process and equal protection violations.

### A.   Due Process

The Court finds that Plaintiff fails to state a colorable Fourteenth Amendment due process claim based on classification status, jobs, and educational classes.  "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  However, inmates have

no liberty interest in their classification status, prison employment, or programming opportunities. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that prisoners have no liberty interest in their classification status); *Collins v. Palczewski*, 841 F.Supp. 333, 336, 340 (D. Nev. 1993) (finding that neither the U.S. Constitution, Nevada statutory law, nor the state's prison administrative regulations create a protected liberty or property interest in prison employment); *Brown v. Sumner*, 701 F. Supp. 762, 764 (D. Nev. 1988) (finding that "[i]n general, prisoners have no fourteenth amendment due process rights to participate in a work, educational, or vocational training program"). As such, the Court dismisses this claim with prejudice as amendment would be futile.

### B.   Equal Protection

The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all similarly situated persons be treated equally under the law. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In order to state an equal protection claim, a plaintiff must allege facts demonstrating that defendants acted with the intent and purpose to discriminate against him based upon membership in a protected class, or that defendants purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The Court finds that Plaintiff fails to state a colorable equal protection claim. Plaintiff has not alleged that he is in a protected class and that prison officials are discriminating against him based on membership in a protected class. Inmates are not members of a suspect class. *Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998). Additionally, to the extent that Plaintiff is attempting to allege that he is similarly situated to the Muslim inmates, he is not. A group based on a religion is not similarly situated to a group based on programming or job status. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005)

(holding that, in an equal protection claim, "[t]he groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified" but noting that "[a]n equal protection claim will not lie by 'conflating all persons not injured into a preferred class receiving better treatment' than the plaintiff"). Although religion is a suspect class, programming and job status are not. *Al Saud v. Days*, 50 F.4th 705, 710 (9th Cir. 2022) (stating "[r]eligion is a suspect class"). The Court dismisses this claim without prejudice with leave to amend.

### III.   LEAVE TO AMEND

Although the Court grants Plaintiff leave to amend, it does not grant Plaintiff leave to amend in any way that he sees fit. Plaintiff has leave to amend to allege additional true facts to show equal protection violations, if he can. The Court does not give Plaintiff leave to assert new claims.

If Plaintiff chooses to file an amended complaint, he is advised that an amended complaint replaces the complaint, so the amended complaint must be complete in itself. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal). This means that the amended complaint must contain all facts and claims and identify all defendants that he intends to sue. He must file the amended complaint on this Court's approved prisoner-civil-rights form, and it must be entitled "First Amended Complaint." Plaintiff must follow the instructions on the form. He need not and should not allege very many facts in the "nature of the case" section of the form. Rather, in each claim, he should allege facts sufficient to show what each defendant did to violate his civil rights.

He must file the amended complaint within 30 days from the date of entry of this order. If Plaintiff chooses not to file an amended complaint curing the stated deficiencies, the Court will dismiss this case without prejudice for failure to state a claim.

**IV.   CONCLUSION**

It is therefore ordered that a decision on the application to proceed *in forma pauperis* (ECF No. 1) is deferred.

It is further ordered that the Clerk of the Court file the complaint (ECF No. 1-1).

It is further ordered that the Fifth Amendment due process claim is dismissed with prejudice as amendment would be futile.

It is further ordered that the Fourteenth Amendment due process claim is dismissed with prejudice as amendment would be futile.

It is further ordered that the Fourteenth Amendment equal protection claim is dismissed without prejudice with leave to amend.

It is further ordered that Defendants Garrett and LeGrand are dismissed without prejudice from the complaint.

It is further ordered that, if Plaintiff chooses to file an amended complaint curing the deficiencies of his complaint, as outlined in this order, Plaintiff will file the amended complaint within 30 days from the date of entry of this order.

It is further ordered that the Clerk of the Court will send to Plaintiff the approved form for filing a § 1983 complaint, instructions for the same, and a copy of his original complaint (ECF No. 1-1).  If Plaintiff chooses to file an amended complaint, he should use the approved form and he will write the words "First Amended" above the words "Civil Rights Complaint" in the caption.

///

///

///

1    It is further ordered that, if Plaintiff fails to file an amended complaint

2 curing the deficiencies outlined in this order, the Court will dismiss this action

3 without prejudice for failure to state a claim.

4

5    DATED THIS 10th day of July 2023.

6

7

8    _____

9    ANNE R. TRAUM
     UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28